In the Matter of the Claim of MARGARETA NEEDLEMAN, Respondent, v. QUEENSBORO MEDICAL GROUP et al., Appellants. WORKMEN'S COMPENSATION BOARD, Respondent.

Third Department, March 11, 1969.

384

*Michael P. Fogarty* and *Marshall F. Denenholz* for appellants.

*Louis J. Lefkowitz, Attorney-General* (*Julius Fell* and *Daniel Polansky* of counsel), for Workmen's Compensation Board, respondent.

GIBSON, P. J. Appeal is taken by an employer and its insurance carrier from a decision of the Workmen's Compensation Board, filed March 27, 1968, which awarded benefits under the Disability Benefits Law (Workmen's Compensation Law, art. 9). The case is one of first impression.

Claimant last worked for appellant employer on April 14, 1967, and on that day left her job to accompany her husband, who had taken a position elsewhere. She stated in a letter to the board, but it does not elsewhere appear in the record, that she received one week's vacation pay. In the notice and proof of claim for disability benefits, signed by her on May 19, 1967 and by her physician on May 26, 1967, it appears from the physician's statement that the date claimant "was unable to work" because

of the disability that he there reported was May 1, 1967 and it appears from claimant's statement that she "became disabled" on May 1, 1967; and benefits were claimed, and subsequently awarded, on the basis of that disability date. On June 21, 1967, the carrier rejected her claim, stating: "Since you voluntarily withdrew yourself from the New York State Labor Market, you are ineligible to collect Unemployment Insurance and likewise ineligible to collect New York State Disability Benefits." The Referee made an award and a board panel sustained it, holding: "Though the claimant may have been ineligible for unemployment insurance benefits because she left her employment to follow her husband to another locality, see Labor Law, Section 593, subdivision 1, paragraph b(2); we find that the provisions of the Disability Benefits Law pertaining to disqualification for disability benefits where the claimant is ineligible to receive unemployment insurance benefits was intended to apply only to claims for disability benefits against the Special Fund for Disability Benefits under Section 207 of the Disability Benefits Law".

The statutory provision upon which this appeal turns is, in pertinent part, as follows: "§ 205. Disabilities and disability periods for which benefits are not payable. No employee shall be entitled to benefits under this article: * * * 7. for any period in respect to which such employee is subject to suspension or disqualification of the accumulation of unemployment insurance benefit rights, or would be subject if he were eligible for such benefit rights, except for ineligibility resulting from the employee's disability". (Workmen's Compensation Law [Disability Benefits Law], § 205.) Such a "suspension or disqualification of the accumulation of unemployment insurance benefit rights", or, in less cumbrous language, a suspension of benefits (cf. Unemployment Insurance Law [Labor Law, art. 18], § 590, subd. 1, from which the language in the Disability Benefits Law was derived) occurs under various circumstances, as enumerated in section 593 of the Unemployment Insurance Law, providing, so far as here pertinent: "§ 593. Disqualification for benefits. 1. Voluntary separation. * * * (b) A disqualification as provided in this subdivision shall also apply after a claimant's voluntary separation from his last employment prior to the filing of his claim if such voluntary separation was due to claimant's (1) marriage, or (2) following his spouse to another locality." (Labor Law [Unemployment Insurance Law], § 593, subd. 1.) It being conceded that claimant's separation from her employment was " voluntary ", having been " due to claimant's * * * following [her] spouse to another locality ", it is

certain that these facts worked a "suspension * * * of [her] unemployment insurance benefit rights" (Workmen's Compensation Law [Disability Benefits Law], § 205, subd. 7) and it seems equally clear that claimant was thus disqualified from disability benefits as well, in accordance with said subdivision 7. The concept that disqualification from unemployment insurance imposes disqualification for disability benefits could scarcely be simpler or more logical. Under each act, benefits are payable in substitution for wages which the employee has been deprived of through no fault of his own; in one case by reason of unemployment not chargeable to him and in the other by disability for which he is not responsible; but when his separation from employment is by his own act, he relinquishes not merely his wages but also, and logically enough, his right to unemployment insurance benefits or disability benefits, as the case may be, in substitution therefor.[1]

In this case, various theories have been advanced in avoidance of this seemingly simple exercise in cause and effect; and in justification of the award of benefits in lieu of wages which claimant would never have received in any event, whether or not she had become ill. The board's decision, for example, rests solely on its categorical statement, unsupported by any stated reason or by any citation of authority, that the disqualification imposed by subdivision 7 of section 205 "was intended to apply only to claims for disability benefits against the Special Fund for Disability Benefits under Section 207 of the Disability Benefits Law". The board's conclusion is patently erroneous, as appears from the very first clause of section 205, which applies the proscriptions of the section to benefits "under *this article*" (emphasis supplied), which article, of course, is article 9, constituting the Disability Benefits Law in its entirety and embracing *all* benefits provided by the act.[2] Indeed, the Attorney-

---

1. The construction here arrived at finds support in certain bill jacket materials, in particular, a memorandum from Assemblyman Mailler, one of the sponsors, indicating that a person who becomes disabled by reason of a nonoccupational injury or sickness within four weeks after voluntarily terminating his or her employment will not be entitled to disability benefits; and a proposed pamphlet prepared by the Superintendent of Insurance stating: "Nor are payments made to claimants who have voluntarily quit work and have withdrawn from the labor market". (See Governor's Bill Jacket, L. 1949, ch. 600 [Disability Benefits Law].)

2. Further, had the Legislature intended to apply the limitations imposed by subdivision 7 only to benefits granted by section 207, would it not have either (1) employed language similar to that utilized in section 206, which makes express provision as to certain benefits *not* payable under section 207 or (2) added the exclusion to those set forth in section 206?

General's brief for the board, while supporting the rationale of the board's decision, seeks also to buttress the decision upon additional grounds which the board itself did not advance.

Thus, it is now contended that, despite section 205, claimant was rendered eligible for benefits and her claim was preserved by the provision of section 203 of the Disability Benefits Law that an employee of a covered employer " eligible for disability benefits *as provided in section two hundred four* * * * shall continue to be eligible during such employment and for a period of four weeks after such employment terminates " (emphasis supplied). However, and as respondents seem to overlook, section 204 so referred to provides benefits generally, but " *subject to the* * * * conditions and *limitations in* this section and *in sections two hundred five* and two hundred six " (emphasis supplied); and so we are returned full-circle to subdivision 7 of section 205, the key provision, and thus arrive, it would seem, at the inescapable answer to the alternative theory propounded by respondents in mistaken reliance upon section 203.

Although the hereinbefore quoted statutory provisions seem to dispose of the controversy, we note parenthetically our disapproval of the subsidiary argument under section 203, that claimant remained " in employment " during the four-week period after she left. In rejecting a similar contention urged by the board in *Matter of Forte* v. *Eastman Kodak Co.* (27 A D 2d 15), we pointed out the fact that under the statute (Workmen's Compensation Law [Disability Benefits Law], § 201, subd. 7), employment " terminates on the last day on which an employee performs work in the service of [the] employer " and we distinguished between " eligibility " and " employment ". We made it clear, as we thought, that the claimant is not to be deemed in employment during the four weeks (and, indeed, section 203 itself refers to four weeks after the employment *terminates*); and that the four weeks apply only to eligibility.

A further argument in support of the award, originally advanced by claimant and mentioned in, but not adopted by the Attorney-General's brief, rests solely on statements in a letter written by claimant, and not in evidence, that on leaving on April 14 she received a week's vacation pay and that she became ill just one week later, on April 21. (As has been noted, however, she and her physician certified disablement as of May 1 and both the claim and the award proceeded on that basis.) From this it is urged that she remained in employment until April 21. While this theory appears to be inhibited for several reasons (cf., e.g., *Matter of Fabian* v. *Link Div.-Gen. Precision*, 22 A D 2d 725), it

seems to be effectually disposed of by the statutory provision that: " Employment with a covered employer terminates on the last day on which an employee performs work in the service of such employer; provided, however, that employment shall not terminate on such day if the employee by *agreement with the employer*, then commences, for a specified period, a leave of absence with pay or vacation with pay, *at the conclusion of which the employee will return to work with the same employer*." (Workmen's Compensation Law [Disability Benefits Law], § 201, subd. 7; emphasis supplied.) Here, there was no " agreement " nor any intent or expectation that claimant would return to the employment at the conclusion of the seven-day period or thereafter; and claimant's own testimony is to the contrary.

The decision should be reversed and the claim dismissed, without costs.

HERLIHY, J. (concurring). It seems to me that if the matter were remitted to the board the record might be further developed so that it could make a proper legal decision.

This court has determined that not every voluntary leaving is an automatic disqualification from unemployment benefits even if it involves the specific item of following one's spouse. (See *Matter of Russo* [*Catherwood*], 18 A D 2d 846; *Matter of Lauria* [*Catherwood*], 18 A D 2d 848.)

As to vacation with pay, see *Matter of Fabian* v. *Link Div.-Gen. Precision* (22 A D 2d 725). (See, also, Labor Law, § 591, subd. 3, par. [a].)

In accord with the liberal interpretation given to the Workmen's Compensation Law and social legislation in general, the claimant is entitled to every favorable intendment of the legislation and particularly so in view of the fact that employees are liable to pay contributions for this beneficial protection (Workmen's Compensation Law, § 209).

There is no doubt that the board was wrong in its application of the law and, therefore, I concur in the result because a dissent based on the facts would be of no avail.

REYNOLDS, AULISI and GREENBLOTT, JJ., concur with GIBSON, P. J.; HERLIHY, J., concurs in the result in a separate opinion.

Decision reversed and claim dismissed, without costs.